E-FILED
Friday, 30 October, 2026 12:45:41 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,** | ) | |
| **v.** | ) | **Case No. 25-cr-30034** |
| **CHARLES T. LEE,**<br>**Defendant.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Charles T. Lee's Motion to Suppress Evidence. (Doc. 35). For the reasons that follow, Defendant's Motion is Denied.

## I. BACKGROUND[1]

Defendant is charged by Indictment with two counts of Distribution of 5 Grams or more of Methamphetamine, one count of Distribution of 50 Grams or more of Methamphetamine, one count of Possession with Intent to Distribute 50 Grams or more of Methamphetamine, one count of Possessing a Firearm During and in Relation to a Drug Trafficking Crime, and one count of Possession of a Firearm by a Prohibited Person. The charges stem from an April 24, 2025 search of Defendant's vehicle following a traffic stop. Defendant moves to suppress the evidence recovered during that search.

Sgt. Niko Lullo, a McClean County Sheriff's Office Detective assigned to narcotics investigations, testified that he learned from a confidential source (CS) that officers could

[1] Unless otherwise noted, this information is taken from the testimony or evidence presented at the evidentiary hearing.

purchase a substantial amount of methamphetamine from an individual named "Charles Lee." Sgt. Lullo directed the CS to purchase narcotics from Defendant, arranging for the CS to contact Defendant via cell phone. Based on information received from the CS and Sgt. Lullo's investigation, Lullo believed the CS was talking to Defendant. During the conversation, the CS informed Defendant he wished to buy the "usual amount." The individual speaking to the CS told him he was in Bloomington, Illinois, and could accommodate the request. Furthermore, officers believed Defendant would be driving a maroon Chevrolet Silverado. Sgt. Lullo testified that the CS told him where in the car the drugs could be found. Sgt. Lullo, along with other officers including Deputies Adam Burris[2] and Noah Sadler, continued to conduct surveillance on Defendant. After Defendant started traveling in an unexpected direction, Lullo came to believe that Defendant would not meet up with the CS as arranged so he decided as case agent that the patrol unit would conduct a traffic stop.

Deputy Sadler testified that, at approximately 9:00 p.m. on April 24, 2025, while parked in his vehicle facing the roadway, he observed the maroon Chevrolet Silverado and, based on the information he had received, believed it was Defendant driving the vehicle. Deputy Sadler then began following the Silverado down U.S. Route 51. When the vehicle turned off the highway onto a street that did not have as much lighting, Deputy Sadler noticed the rear registration lights were not functioning properly and were not visible from 50 feet away. Sadler notified other deputies in the area of his observation.

---

[2] Burris testified he was a patrol deputy at the time of the incident and has since become a detective.

Deputy Burris credibly testified he received information from Deputy Sadler that Sadler could not see a registration light illuminating the rear registration of the vehicle believed to be driven by Defendant while on U.S. Route 51. Subsequently, Deputy Burris observed the vehicle at a gas station parking lot and initiated a traffic stop. Deputy Burris testified that one of the rear registration lights was not functioning and the other registration light was not bright enough so as to properly illuminate the registration such that it could be seen from 50 feet away. Defendant acknowledged the plate light was dimly illuminated and apologized. Deputy Burris decided to issue a written warning. While Burris was in the process of writing the citation, Deputy Sadler arrived with his K9 partner, Kano, who conducted a free air sniff of Defendant's vehicle and alerted to the presence of narcotics.

Deputy Sadler testified that Kano is trained and certified by the State of Illinois in narcotics detection and alerts to methamphetamine, cocaine, crack cocaine, and heroin. After being given the search command, Kano is trained to provide a passive alert upon detecting narcotics by sitting next to the vehicle. Kano's accuracy rate in prior testing is 100%.While Defendant informed officers he did not consent to a search of the vehicle, Defendant's vehicle was searched following the positive alert. Deputy Sadler testified that, after Kano's positive alert, he believed he had probable cause to search the vehicle. Sadler assisted the other officers in the search, which resulted in the discovery of narcotics and a firearm. Deputy Burris testified that, at the time of Kano's alert, Burris had not yet received Defendant's insurance information and he thus had not finished writing the citation.

After 10:00 p.m., Sgt. Lullo was informed that a traffic stop had been conducted and he traveled to the scene of the stop. Lullo testified that the search revealed large quantities of methamphetamine, ecstasy, crack cocaine, powdered cocaine, and a firearm. Defendant had in his possession over $4,000 in U.S. currency, along with two cell phones. It was subsequently determined that one of Defendant's phones had been used to communicate with the CS earlier that day.

## II. DISCUSSION

In seeking the suppression of evidence, Defendant contends that law enforcement officers unlawfully seized him, unduly prolonged the stop, and had no lawful basis to search him or his vehicle. In response, the Government alleges the officers had reasonable suspicion to stop the vehicle, did not prolong the stop, and had probable cause to search the vehicle after Kano's alert.

The Fourth Amendment permits officers to conduct a traffic stop "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014) (internal quotation marks and citation omitted). "Traffic stops are seizures, so they must be reasonable under the circumstances." *Whren v. United States*, 517 U.S. 806, 809 (1996). A police officer may stop a vehicle if the officer has reasonable suspicion of a traffic violation. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). This applies even to minor traffic infractions. *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). The question is whether the officer reasonably believed the driver committed a traffic violation, not whether the driver actually committed a traffic violation. *See Cole*, 21 F.4th at 428; *United*

*States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) (noting that "a police officer's *objectively reasonable* mistake of law can provide reasonable suspicion for a seizure"). "Even the reasonable belief that a driver committed a minor traffic infraction will support a stop." *Jackson*, 962 F.3d at 357. "The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *Jackson*, 962 F.3d at 357.

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). A seizure justified only by a traffic violation "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Id.* at 350–51 (internal quotation marks omitted). That mission may include "determining whether to issue a traffic ticket" and pursuing "ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Cole*, 21 F.4th at 428. A dog sniff does not violate the Fourth Amendment, even absent reasonable suspicion, unless the sniff prolongs the stop beyond the time reasonably necessary to accomplish the stop's original purpose. *United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019). A positive alert from a K9, if reliable, provides police officers with probable cause to search a vehicle. *See United States v. Johnson*, 93 F.4th 383, 388-89 (7th Cir. 2024) ("Because Johnson does not challenge the drug-sniffing dog's reliability, we

can accept the district court's finding that the dog's alerts gave the officers probable cause to search the car.").

Upon considering the parties' arguments and the evidence presented at the hearing, the Court finds Deputy Burris had reasonable suspicion to stop Defendant's vehicle. Illinois law requires a tail lamp to illuminate the rear registration plate of vehicles on public roads, making it "clearly legible from a distance of 50 feet to the rear." 625 ILCS 5/12-201(c). Defendant contends Deputy Sadler's testimony regarding the visibility of the registration light on U.S. Route 51 is not credible. The lighting was good enough for Sadler to see Defendant's license plate and run the registration. When Defendant made a turn from a state highway onto a road with less lighting, Deputy Sadler observed Defendant's vehicle to have insufficient lighting on the rear registration plate. Deputy Burris confirmed this fact upon arriving at the scene of the stop. Defendant even acknowledged the violation. The fact that the rear registration plate might be visible on a highly illuminated road or that the plate may be visible due to another vehicle's headlights does not mean that Defendant did not violate the statute. At the very least, the officers reasonably believed that Defendant had committed a traffic violation, which is sufficient to support a traffic stop. *See Cole*, 21 F.4th at 428; *Jackson*, 962 F.3d at 357.

Furthermore, the officers did not unduly prolong the traffic stop. Deputy Sadler testified he arrived at the stop soon after Deputy Burris. Kano alerted to the odor of narcotics less than four minutes after Deputy Burris first made contact with Defendant. The Seventh Circuit has determined that time periods far longer do not constitute unreasonable delay. *See United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019) (finding

that arrival of K-9 unit within approximately 20 to 30 minutes was not unreasonable delay); *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (K-9 unit's approximately 20 minute response time was not an unreasonable delay). Additionally, Deputy Burris had not completed writing the citation because he had not yet received Defendant's insurance information.

The Court further concludes that, following Kano's positive alert, the officers had probable cause to search the vehicle. While Defendant questions Kano's reliability, the only evidence in the record is that Kano is properly trained, certified by the State of Illinois in narcotics detection, and has an accuracy rate in prior testing of 100%. The Court finds no basis to question Kano's reliability and concludes there was probable cause to search the vehicle. *See e.g., Johnson*, 93 F.4th at 388-89; *see also See United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019) (a properly certified dog's alert provides officers with probable cause to search vehicle).

## III. CONCLUSION

For the reasons stated herein, the officers had reasonable suspicion to stop Defendant's vehicle, did not unduly prolong the stop, and had probable cause to search the vehicle after Kano's positive alert. Therefore, Defendant's Motion to Suppress Evidence (Doc. 35) is DENIED.

ENTER: October 30, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE